2000 ME 201

Katrina F. ABBOTT

v.

SCHOOL ADMINISTRATIVE
DISTRICT NO. 53

and

School Management Association.

Supreme Judicial Court of Maine.

Argued Sept. 6, 2000.

Decided Nov. 13, 2000.

David A. Chase II, Esq., (orally), Macdonald Chase . & Szewczyk, Bangor, for employer.

Anne–Marie Story Hamer, Esq., (orally), Michael P. Friedman, Esq., Rudman & Winchell, LLC, Bangor, for employer.

Panel: WATHEN, C.J., and CLIFFORD, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] The employee, Katrina F. Abbott, appeals from a decision of a Hearing Officer of the Workers' Compensation Board terminating partial incapacity benefits upon the expiration of 260 weeks of benefits, 39–A M.R.S.A. § 213 (Pamph. 1999). Abbott contends that, because she was receiving benefits on January 1, 1999, she is entitled to the 52–week extension for partial benefits that went into effect on January 1, 1999, pursuant to Board Rule 2, chapter 2. Me. W.C.B. Rule, ch. 2, § 2.2. Because the 260–week limitation for partial benefits had been reached during the preceding year when no Board-ordered 52–week extension was in effect, Abbott is not entitled to the 52–week extension that began January 1, 1999. Accordingly, we affirm the decision.

[¶ 2] Abbott suffered a work-related injury to her back on September 2, 1993, while employed as a cafeteria supervisor at M.S.A.D. # 53. She was voluntarily paid the equivalent of total incapacity benefits beginning on September 8, 1993. M.S.A.D. # 53 unilaterally discontinued benefits on October 7, 1998, after Abbott had received benefits for 260 weeks. Abbott responded by filing a petition for re-

view, together with a request for provisional order, in January, 1999. The Board issued a provisional order extending benefits pending resolution of the petition for review, in part, because the employer failed to file a certificate of discontinuance as required by 39–A M.R.S.A. § 205(9)(B)(1) (Pamph.1999).

[¶ 3] In February of 1999, M.S.A.D. # 53 mailed Abbott a certificate of discontinuance notifying her of a termination of benefits and giving the following reasons for termination: (1) Abbott's work-related condition had ended and, in the alternative; (2) because Abbott is partially incapacitated, suffers from no more than 5% whole body impairment, and has received in excess of 260 weeks of benefits, she is no longer entitled to further partial benefits. The Hearing Officer denied Abbott's second motion for a provisional order to reinstate benefits in March of 1999.

[¶ 4] The Hearing Officer initially granted Abbott's petition for review and awarded 100% partial incapacity pursuant to 39–A M.R.S.A. § 213, finding that her ongoing back condition is causally related to her 1993 work-injury. Following the employer's motion for findings of fact, however, the Hearing Officer reversed himself in part. The Hearing Officer's further findings and conclusions of law state, in pertinent part:

## FINDINGS

The employee received 260 weeks of indemnity benefits by September 7, 1998, or in any event in excess of 260 weeks of benefits by December 31, 1998.

## CONCLUSIONS OF LAW

1. The Workers' Compensation Board enacted Section 2 of Chapter 2 of the Rules and Regulations of the Workers' Compensation Board as of May 8, 1999. Extensions to 312 began as of January 1, 1999.

2. The Board finds that as a matter of law the employee's entitlement to workers' compensation benefits ended at 260 weeks, the date of which was prior to either January 1, 1999, or May 8, 1999.

We granted Abbott's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Pamph.1999).

[¶ 5] Section 213 provides:

§ 213. **Compensation for partial incapacity**

1. **Benefit and duration.** While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both. The Board may in the exercise of its discretion extend the duration of benefit entitlement beyond 260 weeks in cases of extreme financial hardship due to inability to return to gainful employment. This authority may not be delegated to a hearing officer and such decisions must be made expeditiously.

2. **Threshold adjustment.** Effective January 1, 1998 and every other January 1st thereafter, the board, using an independent actuarial review based upon actuarially sound data and methodology, must adjust the 15% impairment threshold established in subsection 1 so that 25% of all cases with permanent impair-

ment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than the threshold. The actuarial review must include all cases receiving permanent impairment ratings on or after January 1, 1993, irrespective of date of injury, but may utilize a cutoff date of 90 days prior to each adjustment date to permit the collection and analysis of data. The data must be adjusted to reflect ultimate loss development. In order to ensure the accuracy of the data, the board shall require that all cases involving permanent injury, including those settled pursuant to section 352, include an impairment rating performed in accordance with the guidelines adopted by the board and either agreed to by the parties or determined by the board. Each adjusted threshold is applicable to all cases with dates of injury on or after the date of adjustment and prior to the date of the next adjustment.

**3. Dates of injury between January 1, 1993 and January 1, 1998.** An employee whose date of injury is between January 1, 1993 and January 1, 1998, who has not settled the claim pursuant to section 352 and whose impairment rating is 15% or less to the body but exceeds the adjusted threshold established pursuant to subsection 2 on January 1, 1998 is entitled to compensation for the duration of the disability. Reimbursement to the employer, insurer or group self insurer for the payment of all benefits payable in excess of 260 weeks of compensation under this subsection must be made from the Employment Rehabilitation Fund.

**4. Extension of 260-week limitation.** Effective January 1, 1998 and every January 1st thereafter, the 260-week limitation contained in subsection 1 must be extended 52 weeks for every year the board finds that the frequency of such cases involving the payment of benefits under section 212 of 213 is no greater than the national average based on frequency from the latest unit statis-

tical plan aggregate data for Maine and on a countrywide basis, adjusted to a unified industry mix. The 260-week limitation contained in subsection 1 may not be extended under this subsection to more than 520 weeks. Reimbursement to the employer, insurer or group self-insurer for the payment of all benefits for additional weeks payable pursuant to this subsection must be made from the Employment Rehabilitation Fund.

39-A M.R.S.A. § 213. In 1998, the Board exercised its statutory authority pursuant to subsection 213(2) and adjusted the impairment threshold from 15% to 11.8%. *See* Me. W.C.B. Rule ch. 2, § 1. *See Churchill v. Cent. Aroostook Assoc. for Retarded Citizens, Inc.* ., 1999 ME. 192, ¶ 4, 742 A.2d 475, 477.

[¶ 6] Consistent with its statutory obligation under subsection 213(4), the Board ordered an extension of benefits for 52 weeks beginning January 1, 1999, but not for the year beginning January 1, 1998:

SECTION 2. Extension of 260-week limitation

1. The 260-week limitation referenced in 39-A M.R.S.A. Sec. 213(4) shall not be extended for 52 weeks on January 1, 1998 because the frequency of such cases involving the payment of benefits under Sec. 212 or Sec. 213 is greater than the national average based on frequency from the *1997 Statistical Bulletin* issued by the National Council on Compensation Insurance.

2. The 260-week limitation referenced in 39-A M.R.S.A. Sec. 213(4) shall be extended for 52 weeks on January 1, 1999 because the frequency of such cases involving the payment of benefits under Sec. 212 or Sec. 213 is no greater than the national average based on frequency from the *1998 Statistical Bulletin* issued by the National Council on Compensation Insurance.

Me. W.C.B. Rule, ch. 2., §§ 2.1, 2.2.

[¶ 7] The Hearing Officer concluded that because the 260-week limitation had been

reached prior to January 1, 1999, Abbott is not entitled to the extension beginning on January 1, 1999. Abbott contends that section 2.2 of the 1999 Board Rule, extending benefits for 52 weeks beginning on January 1, 1999, applies retroactively to all injuries on or after January 1, 1993, regardless of when entitlement to those benefits had ended.

[¶ 8] Abbott's interpretation, however, is inconsistent with the plain language of section 212(4), particularly the word "extension." *See* 39–A M.R.S.A. § 213(4) (Pamph.1999). The verb "extend" means to "stretch or draw out; hence, to lengthen or prolong either in space or time." WEBSTER'S NEW COLLEGIATE DICTIONARY (Merriam 1959). By ordinary and customary usage, something that has expired cannot be "extended;" it must be "revived," "reinstated," or "restored."

[¶ 9] Although we find no discussion of the 52–week extension in the legislative history, the Hearing Officer's interpretation is consistent with the apparent purpose of the extension. The date of the first possible extension, January 1, 1998, is exactly 260 weeks after January 1, 1993, the effective date of the Act. *See* P.L.1991, ch. 885, § A–10. Employees injured during 1993, the first year of the act, who receive continuous, uninterrupted benefits from the date of injury, would have been entitled to an extension of partial benefits for 52 additional weeks on January 1, 1998 if the Board *had* determined that an extension of benefits was permissible under the criteria of subsection 213(4).

[¶ 10] No extension of benefits, however, was authorized for the year 1998, and the "extended" language of the statute does not support a conclusion that benefits, once expired, would be "revived" "restored," or "reinstated" in subsequent years. Moreover, such a result would not

promote finality of workers' compensation determinations, and could lead to additional litigation when employees whose entitlement to benefits are "revived" in subsequent years, contend that their incapacity has increased in the intervening time.[1]

[¶ 11] We also agree with M.S.A.D. # 53, that if the Legislature intended an extension in any given year to apply automatically to all employees injured during 1993 and thereafter, even those for whom benefits have expired, it could have used language that clearly so provides. Subsection 213(3) provides:

3. **Dates of injury between January 1, 1993 and January 1, 1998.** An employee whose date of injury is between January 1, 1993 and January 1, 1998, who has not settled the claim pursuant to section 352 and whose impairment rating is 15% or less to the body but exceeds the adjusted threshold established pursuant to subsection 2 on January 1, 1998 is entitled to compensation for the duration of the disability. Reimbursement to the employer, insurer or group self insurer for the payment of all benefits payable in excess of 260 weeks of compensation under this subsection must be made from the Employment Rehabilitation Fund.

39–A M.R.S.A. § 213(3) (Pamph.1999). This subsection illustrates that when the Legislature intends to specifically address that class of employees injured between January 1, 1993 and January 1, 1998, it knows how to do so with express language.

[¶ 12] Abbott further contends that the 260–week limitation should not apply because she was actually receiving benefits for total incapacity on January 1, 1999. According to Abbott, the Hearing Officer found that she was partially incapacitated "only as of the date of reinstatement of Ms. Abbott's benefits on March 5, 1999,"

---

1. Pursuant to 39–A M.R.S.A. § 213(4) (Pamph.1999), the Employment Rehabilitation Fund is responsible for reimbursing employers for partial benefits paid in excess of 260 weeks when an extension is granted. The

burden would therefore likely fall to the Fund to litigate contested cases when employees contend that their incapacity has increased after the expiration of 260 weeks.

and that the Hearing Officer made no finding concerning whether she was receiving benefits for partial or total incapacity either on January 1, 1999, or on the 260th week of benefits in 1998. Although the Board did not explicitly determine whether Abbott was partially or totally incapacitated on January 1, 1999, or at the time she reached her 260th week of benefits in 1998, it makes no difference.

■ [¶ 13] Total incapacity benefits are not subject to a 260–week limitation, *see* 39–A M.R.S.A. § 212 (Pamph.1999), but the weeks during which total benefits are received are included in the 260–week limitation for partial incapacity benefits: "[A]n employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1,[2] this section or both...." 39–A M.R.S.A. § 213(1) (Pamph.1999).

[¶ 14] Pursuant to this statutory scheme, an employee who has received in excess of 260 weeks of total benefits pursuant to subsection 212(1) and is subsequently determined to be only partially incapacitated, would not be entitled to any additional benefits for partial incapacity, because he or she has already received 260 weeks of benefits "under section 212, subsection 1 [total incapacity], this section [213] or both...." *Id.* Accordingly, on the date that total incapacity became partial, the Hearing Officer must consider whether the 260–week limitation had already expired for either total or partial benefits before awarding any additional benefits for partial incapacity. Because the 260–week limitation expired during the preceding year before the Board determined that the 260–week limitation was to be extended, Abbott is not entitled to the 52–week extension for

the new extension-period beginning January 1, 1999.

[¶ 15] Abbott also contends that, as long as she was entitled to receive benefits on January 1, 1999, those *benefits* could be extended by the Board's extension rule. Subsection 213(4) does not refer to an extension of *benefits*, it refers to an extension of the 260–week *limitation*.[3] Accordingly, it makes no difference that the employee may have been entitled to total incapacity benefits by provisional order or otherwise after the date of the extension, January 1, 1999. Because the 260–week *limitation* had been reached prior to January 1, 1999, it could not be "extended" as of January 1, 1999.

■ [¶ 16] Finally, Abbott contends that, because employees with greater than 11.8% permanent impairment are entitled to unlimited partial benefits, *see Churchill*, 1999 ME. 192, at ¶ 4, 742 A.2d at 477, it was error for the Board to order a termination of benefits without first determining whether she is above the 11.8% threshold. Abbott, however, does not contend that she provided any evidence regarding permanent impairment to support a finding that her permanent impairment exceeded 11.8%. We note further that the issue of permanent impairment was expressly raised in the employer's second notice of discontinuance, and, therefore, Abbott was on notice that the permanent impairment threshold was at issue. The employee cannot fail to present evidence of permanent impairment and then argue that the Hearing Officer erred in failing to make any findings concerning permanent impairment.

The entry is:

---

**2.** If Abbott was entitled to total benefits, it is clear that it would have been under subsection 212(1) (Pamph.1999); subsections 2 and 3 deal with the loss of specific body parts. 39–A M.R.S.A. §§ 212(2), (3) (Pamph.1999).

**3.** The language of subsection 4, extending the *limitation*, should be compared with the language of subsection 1, extending the payment

of *benefits:* "The Board may in the exercise of its discretion extend the duration of *benefit entitlement* beyond 260 weeks in cases of extreme financial hardship due to inability to return to gainful employment." 39–A M.R.S.A. § 213(1) (Pamph.1999) (emphasis added).

Decision of the Workers' Compensation Board affirmed.