2004 ME 14

**Richard A. FARRIS**

v.

**GEORGIA–PACIFIC CORPORATION
et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 15, 2003.
Decided: Feb. 9, 2004.

James G. Fongemie (orally), Kevin M. Noonan, McTeague, Higbee, Case, Cohen, Whitney & Toker, P.A., Topsham, for employee.

Kevin M. Cuddy (orally), Cuddy & Lanham, Bangor, for employer.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

SAUFLEY, C.J.

[¶ 1] In this workers' compensation appeal, the following question is presented: which party has the burden of proof with regard to the percentage of whole body impairment that must be determined in order to apply the cap on compensation benefits set forth at 39–A M.R.S.A. § 213(1) (2001 & Supp.2003) when payments are being made pursuant to an award of compensation or compensation scheme? We conclude that the employer bears the ultimate burden of proof, but that the employee is responsible for raising the issue of whole body permanent impairment, and of presenting sufficient evidence to demonstrate that a genuine issue exists with respect to this issue. Accordingly, we vacate the decision of the hearing officer and remand for further consideration.

## I. BACKGROUND

[¶ 2] Richard A. Farris, who was forty-six years old at the time of the decision from which he appeals, began working for Georgia–Pacific Corporation in 1987. In 1994, he suffered a work-related injury to his low back and underwent a laminotomy and disc excision. He left his employment with Georgia–Pacific. in 1995. In 1996, a hearing officer of the Board concluded that Farris had failed to perform any work search since 1995 and awarded him partial incapacity benefits.[1]

[¶ 3] In February 2002, the employer filed a petition for review seeking to terminate the employee's benefits based on the expiration of the maximum week limitation in section 213(1). Relying on a Board rule,[2] Georgia–Pacific subsequently terminated Farris's benefits in June 2002. Farris responded with a petition for review and a request for a provisional order that prompted the hearing officer to require

---

1. Farris's current capacity for work is complicated by a recent nonwork injury. In June of 2002, Farris fell from a stepladder at his home where he was working on the eaves of his roof and suffered an open traverse fracture of his left tibia and fibula. Because the subsequent injury occurred after the mediation in the present case, the hearing officer did not address its compensability and held open the possibility that the employee might "demonstrate, through a further petition, a change of circumstances, as a result of the June 12, 2002 non-work injury, entitling the employee total incapacity benefits under [39–

A M.R.S.A. § 212 (2001)]." The parties have not appealed from this conclusion.

2. The Board rules provide: "Prior to cessation of benefits pursuant to 39–A M.R.S.A. § 213(1) [(2001 & Supp. 2003)], the employer/insurer must notify the employee that the employee's lost time benefits are due to expire. The notice must be sent at least 21 days in advance of the date the lost time benefits are due to expire." Me. W.C.B. Rule ch. 2, § 5.1.

Georgia–Pacific to reinstate benefits pending hearing. *See Russell v. Russell's Appliance Serv.,* 2001 ME 32, ¶¶ 8–10, 766 A.2d 67, 70–71.[3]

[¶ 4] Following a hearing on the applicability of the cap, the hearing officer (*Green, HO*) concluded that there was "no dispute that as of January 8, 2002 the employee had received a total of 389 weeks of incapacity benefits." No evidence was presented regarding the level of permanent impairment caused by Farris's 1994 low-back work injury. Rejecting the employee's argument that "in the absence of any evidence as to the level of permanent impairment resulting from his June 20, 1994 work injury, he is entitled to receive partial incapacity benefits indefinitely," the hearing officer relied on our opinion in *Abbott v. Sch. Admin. Dist. No. 53,* 2000 ME 201, ¶ 16, 762 A.2d 546, 550, to conclude that "the employee bears the burden of proving a level of permanent impairment sufficient to render the time limit inapplicable." Accordingly, the hearing officer concluded that Farris was precluded from receiving partial incapacity benefits after receiving more than the allotted 364 weeks of compensation under either 39–A M.R.S.A. §§ 212 or 213 (2001 & Supp. 2003).

[¶ 5] We determined that the assignment of the burden of proof regarding the nature and extent of whole body impairment is an important question of law that is likely to recur, *see* M.R.App. P.

23(b)(2)(A)(i), and therefore granted the petition for appellate review.

## II. DISCUSSION

### A. Context

[¶ 6] As part of the 1993 revisions to the Workers' Compensation Act intended to establish greater controls on workers' compensation payments, the Legislature established a durational cap on partial incapacity benefits when the employee's level of permanent impairment fell below an enumerated percentage. Specifically, section 213(1) provides as follows:

Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of [11.8%] to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received [364] weeks of compensation under section 212, subsection 1, this section or both.

*Id.*[4]

[¶ 7] The parties do not dispute the applicability of section 213(1), but disagree on the assignment of the burden of proof regarding the level of permanent impairment. Ordinarily, the burden of proof in workers' compensation cases is on the party filing the petition, unless there is a

---

3. In *Russell v. Russell's Appliance Serv.,* 2001 ME 32, ¶¶ 8–10, 766 A.2d 67, 70–71, we held that, in cases when there has been an order awarding benefits or a compensation payment scheme, the employer must first file a petition for review with the Board pursuant to 39–A M.R.S.A. § 205(9)(B)(2) (2001) before discontinuing benefits.

4. Originally, the impairment threshold was set by the Legislature at 15%. Pursuant to 39

M.R.S.A. § 213(4) (2001 & Supp.2003), the Board has since then reduced the threshold impairment level to 11.8%. Me. W.C.B. Rule, ch. 2, § 1. Neither party challenges the process or percent applied by the Board or the hearing officer in this case. Similarly, the Board exercised its authority pursuant to section 213(4) and extended an original 260–week limitation to 364 weeks. Me. W.C.B. Rule, ch. 2, §§ 2.2, 2.3.

compelling reason for shifting the burden of proof, *see generally Fernald v. Dexter Shoe Co.,* 670 A.2d 1382, 1385 (Me.1996), or a statute or rule explicitly establishes the burden. Section 213 is silent regarding the burden of proof to establish an employee's level of whole body permanent impairment, and the Board has not promulgated rules to address the issue.

■ [¶ 8] Thus, a simple approach would be to require the moving party to shoulder the burden of proof. We are, however, reluctant to place the burden on the moving party when the process of identifying the correct "moving party" may result in inequities or unnecessary confusion. As we have noted, "[a]lthough, as a general matter, the petitioning party bears the burden of proof on all issues, we have recognized exceptions to that rule when placing the burden on the moving party is impractical or unreasonable." *Fernald,* 670 A.2d at 1385. We conclude that this is one of those instances.

[¶ 9] We reach this conclusion because, pursuant to 39–A M.R.S.A. § 205(9)(B)(1) (2001), the moving party will vary depending on whether there has been an award of benefits or a compensation scheme. When the employer is voluntarily paying benefits without an order or a compensation scheme, the employer may discontinue or reduce benefits after twenty-one days from the mailing of a certificate to the employee and the Board. 39–A M.R.S.A. § 205(9)(B)(1). The apparent purpose of this provision is to encourage employers to voluntarily pay benefits without the necessity of litigation. Employers who voluntarily pay benefits under these circumstances may discontinue benefits unilaterally after twenty-one days notice, and the burden then shifts to the employ-ee to file a petition and prove entitlement to benefits. *Id.*

[¶ 10] In contrast, when payments are being made pursuant to an award or compensation scheme, the Act requires the employer to petition the Board for an order authorizing a reduction or discontinuance of benefits, and to continue paying benefits until after the expiration of the appeal period, even if the employer prevails before a hearing officer on its petition for review. 39–A M.R.S.A. § 205(9)(B)(2) (2001). The apparent purpose of this provision is to promote finality and to reduce the chance of a premature reduction or termination of benefits for employees entitled to receive benefits.

[¶ 11] If, however, an employer unilaterally discontinues benefits when there has been an award of compensation or a compensation scheme, in contravention of section 205(9)(B)(2), the employee will be forced to take action, usually the filing of a petition, to challenge the reduction of benefits.[5] In those circumstances the employee is the "moving party," but this is only because the employer acted unilaterally when it was not authorized to do so.

[¶ 12] Thus, because of the potential for mischief when the burden follows the "moving party," we conclude that the burden must be more clearly established.

B. The Burden of Production

[¶ 13] In determining where the burden should be placed, we first address the hearing officer's reliance on *Abbott,* 2000 ME 201, ¶ 16, 762 A.2d at 550, in placing the burden of proof regarding the level of permanent impairment on the employee. In *Abbott,* we addressed, in part, an argument raised by the employee that, in applying the maximum-week cutoff in section

---

5. In the present case, for example, Georgia–Pacific properly filed a petition for review, but unilaterally suspended benefits while the petition was pending before the Board.

213, the hearing officer failed to determine the employee's percentage of whole body permanent impairment. *Id.* We rejected the argument, noting that Abbott had herself failed to provide any evidence on the issue of permanent impairment. *Id.*

[¶ 14] Although the statute controlling the process for the *Abbott* analysis was different from the present case, in that Abbott's employer had been voluntarily paying benefits without an order or a compensation payment scheme and was therefore entitled to unilaterally terminate benefits after filing a certificate and providing twenty-one days notice, *id.* ¶¶ 2, 3 762 A.2d at 546–47; 39–A M.R.S.A. § 205(9)(B)(1), the question presented by *Abbott* is apposite here: does the employee have the burden of *raising the issue* of the level of impairment in a hearing regarding the application of the cap? Without reaching the question of the ultimate burden of proof, we concluded that the employee must, at a minimum, affirmatively assert the existence of a level of permanent impairment that would entitle him to indefinite receipt of benefits.

[¶ 15] Placing the burden of production on the employee is consistent with the statutory scheme regarding the payment cap. The Legislature expected that fewer than twenty-five percent of these cases would exceed the cap. 39–A M.R.S.A

§ 213(2) (2001 & Supp.2003). Thus, although the issue may be important in many cases, there will be a substantial number of cases where there is little dispute that the threshold has not been reached. When there is no dispute that the employee's whole body permanent impairment does not meet the 11.8% threshold, it would be unnecessarily costly and time-consuming to require the employer to obtain expert medical opinion evidence on the extent of an employee's permanent impairment as an automatic initial step in litigating a petition for review.

[¶ 16] Therefore, we conclude that when the employee seeks to make the percentage of impairment an issue at the hearing, the employee must bear a burden of raising the issue of the percentage of whole body impairment, and of producing some evidence to persuade a reasonable fact-finder of the existence of a genuine issue concerning the percentage of impairment.[6] The burden of production does not require that the employee *convince* the hearing officer on the ultimate issue of whole body permanent impairment, but merely that the employee must produce competent evidence to suggest that the employee's whole body permanent impairment may be above the threshold for purposes of obviating the durational cap pursuant to section 213(1).[7]

---

6. The principle is similar to the long-established "work search" rule. In those cases, we have carefully distinguished between the burden of proof and the burden of production. *See, e.g., Ibbitson v. Sheridan Corp.,* 422 A.2d 1005, 1008–09 (Me.1980); *Pelchat v. Portland Box Co.,* 155 Me. 226, 229–30, 153 A.2d 615, 617–18 (1959); *Connelly's Case,* 122 Me. 289, 292, 119 A. 664, 665–66 (1923). We have held that, on an employer's petition for review, the employer bears a never-shifting burden of proof to show that an employee's earning capacity has increased. *Ibbitson,* 422 A.2d at 1008–09. Pursuant to the "work search" rule, however, once an employer

makes an initial showing that the employee's physical capacity has increased, an employee seeking 100% partial incapacity benefits bears a burden of production to show that work is unavailable to the employee as a result of the work injury. *Id.* at 1009. If the employee meets this burden of production, the burden of proof returns to the employer to establish that work is available to the employee. *Id.*

7. We note that the process for raising the defense of the higher level of permanent impairment could benefit from clear rules promulgated by the Board.

## C. The Burden of Proof

██ [¶ 17] The next step is the determination of the ultimate burden of proof regarding the level of permanent impairment. It is apparent from the statutory scheme that, by requiring the employer to file a petition before suspending or reducing benefits, the Legislature intended the employer to bear the burden of proof when there has been a prior award or compensation scheme. Specifically, in those instances where the employer is paying pursuant to an award or scheme and may not unilaterally terminate benefits, the Legislature intended to require the employer to prove all of the elements requisite to the imposition of the cap. *See* 39–A M.R.S.A. § 205(9)(B)(2) (requiring the employer to petition the Board to reduce or discontinue benefits); *Russell*, 2001 ME 32, ¶¶ 8–10, 766 A.2d at 70–71 (employer must petition the Board pursuant to 39–A M.R.S.A. § 205(9)(B)(2), prior to discontinuing benefits under a maximum-week limitation). Therefore, in cases falling within section 205(9)(B)(2), when the employee has met his or her burden of producing evidence concerning a level of permanent impairment that would defeat the employer's attempt to impose the cap, the employer bears the ultimate burden of proving that it is entitled to discontinue benefits, e.g., that it has paid the number of weekly benefits required to reach the cap, and that the level of permanent impairment is not above the statutory threshold.

## D. Conclusion

[¶ 18] Because the hearing officer erred in concluding that the ultimate burden of proof lies with the employee, and it is unclear from the record whether the employee raised the issue and presented evidence pursuant to *Abbott* and this opinion, we vacate the decision. We remand the case for further proceedings consistent with this opinion and leave the decision whether to allow the parties to reopen the record to the sound discretion of the hearing officer.

The entry is:

Decision of the hearing officer is vacated and remanded to the Workers' Compensation Board for further proceedings consistent with the opinion herein.