2006 ME 117

**Terry BISCO**

v.

**S.D. WARREN COMPANY et al.**

Supreme Judicial Court of Maine.

Argued: April 10, 2006.
Decided: Oct. 17, 2006.

James J. MacAdam, Esq. (orally), MacAdam Law Offices, P.A., Portland, for the plaintiff.

L. Dennis Carrillo, Esq. (orally), H. Peter Del Bianco Jr., Esq., Lambert Coffin, Portland, for the defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Terry Bisco appeals from a judgment of the Workers' Compensation Board (*Jerome, HO*) finding that the percentage of permanent impairment from Bisco's 1999 work injury should not be stacked onto that from his 1990 and 1995 work injuries. Consequently, Bisco's 1999 work injury is subject to the statutory cap for partial incapacity compensation. Bisco contends that the hearing officer improperly placed the burden of persuasion on him to establish that the work injuries should be stacked. Because the hearing officer misapplied *Farris v. Georgia–Pacific Corp.*, 2004 ME 14, 844 A.2d 1143 by holding the employee to a burden of persuasion rather than a burden of production, we vacate the judgment.

## I. BACKGROUND

[¶ 2] Terry Bisco worked for S.D. Warren as an inside truck driver and compactor operator from 1985 to 1999. In 1999, Bisco suffered a work-related injury to his neck, left shoulder, and lower back when an overhead door came down on top of him. He also suffered work-related injuries to the upper extremities in 1990, when his hands were crushed beneath a roller, and in 1995, when he experienced a gradual, bilateral carpal tunnel injury.

[¶ 3] In a 2002 decision, the hearing officer determined that Bisco continued to suffer incapacity as a result of the 1990, 1995, and 1999 injuries. The hearing officer awarded Bisco ongoing partial benefits and apportioned 50% liability to the 1999 injury and 50% to the 1990 and 1995 upper extremity injuries.

[¶ 4] In 2003, S.D. Warren filed petitions to establish maximum medical improvement [1] with respect to the 1990 injury, and to determine the extent of permanent impairment [2] resulting from the 1995 carpal tunnel injury and the 1999 neck, shoulder, and back injury. The hearing officer concluded that Bisco had reached maximum medical improvement with respect to the 1990 injury. She further determined that Bisco suffered 21% permanent impairment from the 1995 injury and 5% permanent impairment from the 1999 injury. In support of stacking [3] the impairment levels, Bisco provided the following as evidence that the 1999 injury to his neck, shoulder, and back aggravated the 1995 upper extremity injury: he testified that when driving, he has back pain from the 1999 injury that he has to compensate for by pushing himself up with his hands, which causes pain in the area affected by the 1995 injury. In addition, one of the three doctors who testified in this case stated that an injury to the neck, shoulder, and back area could adversely affect the upper extremities. The hearing officer did not stack the 5% impairment from the 1999 injury onto the 21% impairment from the 1995 injury because she determined that Bisco did not meet his burden of production to show that the 1999 injury aggravated or accelerated the 1995 injury.

[¶ 5] The result of the hearing officer's decision is that 50% of the partial benefit

---

1. "Maximum medical improvement" is defined as "the date after which further recovery and further restoration of function can no longer be reasonably anticipated, based upon reasonable medical probability." 39–A M.R.S. § 102(15) (2005).

2. "Permanent impairment" is defined as "any anatomic or functional abnormality or loss existing after the date of maximum medical improvement that results from the injury." *Id.* § 102(16).

3. Stacking, in the context of workers' compensation, is the process whereby separate and unrelated injuries are combined for the purposes of determining impairment levels and corresponding benefits.

apportioned to the 1999 injury will be subject to the 364–week limitation for partial benefits established by statute and rule, and the 50% apportioned to the 1990 and 1995 injuries will continue for the duration of the disability. *See* 39–A M.R.S. § 213(1) (2005); Me. W.C.B. Rule, ch. 2, §§ 1–2.

[¶ 6] Bisco filed a petition for appellate review to challenge the hearing officer's judgment. We granted the petition pursuant to 39–A M.R.S. § 322 (2005).

## II. DISCUSSION

[¶ 7] Bisco contends that the hearing officer misapplied our holding in *Farris*, 2004 ME 14, ¶ 16–17, 844 A.2d at 1147–48, which established a burden-shifting scheme with regard to the percentage of whole body impairment that must be determined in order to apply the cap on compensation benefits set forth in 39–A M.R.S. § 213(1). Bisco argues that the hearing officer improperly assigned him the burden of persuasion. S.D. Warren argues that the hearing officer properly allocated the burdens of production and persuasion in accordance with *Farris*, and appropriately found that Bisco did not meet his burden of production. We must determine whether the hearing officer erroneously assigned the burden of persuasion to Bisco.[4]

---

**4.** Because it was raised for the first time before us in Bisco's reply brief, we do not address Bisco's position that 39–A M.R.S. § 213(1–A)(A) (2005) defines "permanent impairment" to include all prior work injuries without regard to whether one injury has aggravated or accelerated the other.

**5.** Originally, the Legislature set the permanent impairment threshold at 15%. In 1998, the Workers' Compensation Board exercised its authority pursuant to 39–A M.R.S. § 213(2) (2005), and adjusted the threshold from 15% to 11.8%. Me. W.C.B. Rule, ch. 2,

A. The Relevant Statutory Provisions

[¶ 8] Title 39–A M.R.S. § 213 governs partial incapacity benefits and the length of time that injured employees receive those benefits, according to the percentage of permanent impairment suffered by the employee. It provides, in part:

**§ 213. Compensation for partial incapacity**

**1. Benefit and duration**.... Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of [11.8%] to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received [364] weeks of compensation under section 212, subsection 1, this section or both.... [5]

**1–A. Determination of permanent impairment.** For purposes of this section, "permanent impairment" includes only permanent impairment resulting from:

A. The work injury at issue in the determination and any preexisting physical condition or injury that is aggravated or accelerated by the work injury at issue in the determination; ....

---

§ 1. The Board has also exercised its authority twice pursuant to section 213(4) to extend the 260–week limit by fifty-two weeks, such that at present, the durational limit for partial incapacity benefits for injured workers with permanent impairment ratings of less than 11.8% is 364 weeks. Me. W.C.B. Rule, ch. 2, § 2(2), (3). The Board recently increased the permanent impairment threshold for cases with dates of injury between 2002 and 2004 to 13.2%, and for cases with dates of injury after January 1, 2004, to 13.4%. Me. W.C.B. Rule, ch. 2, § 1 (effective March 11, 2006).

. . . .

## B.  Analysis

■ [¶ 9] In general, "the petitioning party bears the burden of proof on all issues." *Fernald v. Dexter Shoe Co.*, 670 A.2d 1382, 1385 (Me.1996); *see, e.g., Daley v. Spinnaker Indus., Inc.*, 2002 ME 134, ¶ 11, 803 A.2d 446, 450. We have recognized exceptions to that rule, however, "when placing the burden on the moving party is impractical or unreasonable." *Fernald*, 670 A.2d at 1385. In *Farris*, we considered that when application of the statutory cap on benefits is at issue, the moving party would vary depending on whether there has been a formal compensation scheme, or whether the employer is voluntarily paying benefits. *See* 39–A M.R.S. § 205(9) (2005). We therefore established a burden-shifting scheme to avoid the "potential for mischief" that would exist if the burden followed the moving party in these types of cases. *Farris*, 2004 ME 14, ¶ 12, 844 A.2d at 1146.

[¶ 10] *Farris* involved an employee who had been awarded partial incapacity benefits for a single, work-related injury. *Id.* ¶ 2, 844 A.2d at 1144. The employer filed a petition to terminate benefits based on the maximum week limitation in section 213(1). *Id.* ¶ 3, 844 A.2d at 1144. No evidence was adduced at the hearing regarding the level of permanent impairment. *Id.* ¶ 4, 844 A.2d at 1145. The hearing officer is quoted as stating "the employee bears the burden of proving a level of permanent impairment sufficient to render the time limit inapplicable," and concluded that the employee had not met the burden in the case. *Id.* Accordingly, the hearing officer determined that because the employee had received 389 weeks of incapacity benefits, he had received all the benefits to which he was entitled, and granted the employer's petition to terminate. *Id.*

[¶ 11] We vacated that decision. We held that, with regard to the percentage of whole body impairment that must be determined in order to apply the statutory cap on partial benefits, "the employer bears the ultimate burden of proof, but that the employee is responsible for raising the issue of whole body permanent impairment, and of presenting sufficient evidence to demonstrate that a genuine issue exists" with respect to whether the impairment exceeds the cap. *Id.* ¶ 1, 844 A.2d at 1144. We stated:

> when the employee seeks to make the percentage of impairment an issue at the hearing, the employee must bear a burden of raising the issue of the percentage of whole body impairment, and of producing some evidence to persuade a reasonable fact-finder of the existence of a genuine issue concerning the percentage of impairment.

*Id.* ¶ 16, 844 A.2d at 1147. With respect to the employer's burden, we stated:

> when the employee has met his or her burden of producing evidence concerning a level of permanent impairment that would defeat the employer's attempt to impose the cap, the employer bears the ultimate burden of proving that it is entitled to discontinue benefits, e.g., that it has paid the number of weekly benefits required to reach the cap, and that the level of permanent impairment is not above the statutory threshold.

*Id.* ¶ 17, 844 A.2d at 1148.

■ [¶ 12] Accordingly, Bisco, the employee, bore the burden of raising the issue of whether permanent impairment from unrelated injuries should be stacked for the purpose of obviating the durational cap. Pursuant to sections 213(1) and 213(1–A)(A) and *Farris*, the employee

would meet the burden of production by asserting that combined impairment levels would exceed the 11.8% threshold and by producing some evidence that supports the stacking of impairment levels. Pursuant to section 213(1–A)(A), this would require production of evidence demonstrating the existence of a genuine issue that a later injury aggravated or accelerated an earlier injury. The burden would then shift to the employer to prove that permanent impairment levels should not be stacked.

[¶ 13] The hearing officer found that Bisco did not meet the burden of production with respect to whether the impairment from the 1999 injury should be stacked onto the impairment from the prior injuries because the evidence submitted was "insufficient to demonstrate that Mr. Bisco's 1999 work injury to his back aggravates or accelerates his preexisting upper extremity condition," in that it does not "demonstrate on a more probable than not basis that one work injury aggravates or accelerates the other."

■ [¶ 14] Although the hearing officer based her decision on Bisco's failure to meet his burden of production, when assessing whether Bisco met that burden she employed too high an evidentiary standard. "The burden of production does not require that the employee *convince* the hearing officer on the ultimate issue . . . ." *Farris*, ¶ 16, 844 A.2d at 1147. Bisco established by his own testimony that pain in his back from the 1999 injury causes him to make adjustments in his driving that, in turn, cause him pain to his 1995 injury in his hands and wrists. This evidence is sufficient, as a matter of law, to meet the burden of production. Accordingly, the hearing officer must move to the next issue: did the *employer* meet its burden of persuasion, that is, did the employer demonstrate by a preponderance of the evi-

dence that the 1999 injury did not aggravate or accelerate the 1995 injury.

The entry is:

The decision of the hearing officer of the Workers' Compensation Board is vacated. Remanded for further proceedings consistent with this opinion.