2009 ME 65

**Carol BEAUDOIN**

v.

**TAMBRANDS, INC., et al.**

Supreme Judicial Court of Maine.

Argued: April 15, 2009.
Decided: July 7, 2009.

Elizabeth Connellan Smith, Esq. (orally), Verrill Dana, LLP, Portland, ME, for Tambrands, Inc. and Cambridge Integrated Services.

Benjamin DeTroy, Esq. (orally), Leary & DeTroy, Auburn, ME, for Carol Beaudoin.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

**CLIFFORD, J.**

[¶ 1] Tambrands, Inc., appeals from a decision of a Workers' Compensation Board hearing officer (*Goodnough, HO*), granting Carol Beaudoin's petition for review, and awarding her an additional fifty-two weeks of benefits based on an amendment to the Board's rules that extended the durational limit for partial incapacity benefits. *See* Me. W.C.B. Rule, ch. 2, § 2(7). Tambrands argues that the hearing officer erred in granting the petition for review because a prior decision of the hearing officer allowing Tambrands to cease paying benefits to Beaudoin had become final before the Board adopted the amendment. We affirm the decision of the hearing officer.

## I.  FACTUAL BACKGROUND

[¶ 2] Carol Beaudoin began working for Tambrands in 1971 as a cardroom operator. She worked there until 2000, and officially retired in 2001. Beaudoin sustained a work-related injury to her lower back on March 3, 2000, resulting in 10% whole person permanent impairment. Tambrands paid her incapacity benefits voluntarily and without prejudice until May 14, 2007. At that time, Tambrands provided Beaudoin with a twenty-one-day notice pursuant to 39–A M.R.S. § 205(9)(B)(1) (2008), informing her that it intended to cease payment because her permanent impairment level was below the 11.8% threshold for continued partial benefits, and she had received more than 364 weeks of benefits, the maximum number of weekly partial benefit payments required at that time. Me. W.C.B. Rule, ch. 2, § 1(1); 39–A M.R.S. § 213(1) (2008).

[¶ 3] Beaudoin filed a petition for review, in which she contended that she was entitled to continued benefits because her incapacity level had increased to total incapacity. *See* 39–A M.R.S. § 212(1) (2008). The hearing officer denied the petition, finding that her incapacity had not increased; her permanent impairment level remained below the 11.8% threshold; and she had received all benefits to which she was entitled. Beaudoin filed a motion

for further findings of fact and conclusions of law. In a decision dated November 29, 2007, the hearing officer granted the motion in part, but did not change the ultimate result. Beaudoin did not file a petition for appellate review from that decision.

[¶ 4] On December 4, 2007, pursuant to 39–A M.R.S. § 213(4), the Workers' Compensation Board amended its rules, adding subsection 2(7) to chapter 2, which extended the durational limit for partial incapacity benefits an additional fifty-two weeks "on January 1, 2007." The amendment specifically provides:

> The 260–week limitation referenced in 39–A M.R.S.A. § 213(4) shall be extended for 52 weeks on January 1, 2007 because the frequency of such cases involving the payment of benefits under § 212 or § 213 is no greater than the national average based on frequency from the *2006 Statistical Bulletin* issued by the National Council on Compensation Insurance.

[¶ 5] In January of 2008, Beaudoin filed a petition for review with the Board. She claimed entitlement to an additional fifty-two weeks of benefits because the rule amendment was retroactive to January 1, 2007, and she was entitled to and receiving benefits at that time. The hearing officer granted the petition and awarded her an additional fifty-two weeks of benefits.

[¶ 6] Tambrands filed a petition for appellate review, contending that the hearing officer erred when he reopened the October 3, 2007, decree and extended Beaudoin's benefits because the decree had become final before the amendment took effect. We granted the petition pursuant to M.R.App. P. 23(c) and 39–A M.R.S. § 322 (2008).

## II. DISCUSSION

■ [¶ 7] Title 39–A M.R.S. § 213[1] and the Workers' Compensation Board's

---

1. Title 39–A M.R.S. § 213 (2008) provides, in relevant part:

   **1. Benefit and duration.** While the incapacity for work is partial, the employer shall pay the injured employee a weekly compensation equal to 80% of the difference between the injured employee's after-tax average weekly wage before the personal injury and the after-tax average weekly wage that the injured employee is able to earn after the injury, but not more than the maximum benefit under section 211. Compensation must be paid for the duration of the disability if the employee's permanent impairment, determined according to subsection 1–A and the impairment guidelines adopted by the board pursuant to section 153, subsection 8 resulting from the personal injury is in excess of 15% to the body. In all other cases an employee is not eligible to receive compensation under this section after the employee has received 260 weeks of compensation under section 212, subsection 1, this section or both. . . .

   **2. Threshold adjustment.** Effective January 1, 1998 and every other January 1st thereafter, the board, using an independent actuarial review based upon actuarially sound data and methodology, must adjust the 15% impairment threshold established in subsection 1 so that 25% of all cases with permanent impairment will be expected to exceed the threshold and 75% of all cases with permanent impairment will be expected to be less than the threshold.

   . . . .

   **4. Extension of 260–week limitation.** Effective January 1, 1998 and every January 1 st thereafter, the 260–week limitation contained in subsection 1 must be extended 52 weeks for every year the board finds that the frequency of such cases involving the payment of benefits under section 212 or 213 is no greater than the national average based on frequency from the latest unit statistical plan aggregate data for Maine and on a countrywide basis, adjusted to a unified industry mix. The 260–week limitation contained in subsection 1 may not be extended under this subsection to more than 520 weeks.

rules provide that benefits awarded to a person suffering from partial incapacity whose permanent impairment level falls below the threshold established by the Board, set at 11.8% for the 2000 injury at issue here, is capped at a certain number of weeks.[2] 39–A M.R.S. § 213(1); Me. W.C.B. Rule, ch. 2, §§ 1, 2. The Legislature initially established the durational limit at 260 weeks, 39–A M.R.S. § 213(1), but required that it

> be extended 52 weeks for every year the board finds that the frequency of such cases involving the payment of benefits under section 212 or 213 is no greater than the national average based on frequency from the latest unit statistical plan aggregate data for Maine and on a countrywide basis, adjusted to a unified industry mix.

39–A M.R.S. § 213(4).

[¶ 8] While Beaudoin's petition for review was pending, the maximum number of weeks that employers were required to pay partial incapacity benefits was 364. Me. W.C.B. Rule, ch. 2, § 2(1)-(6). At the time of the October 3, 2007, decree that allowed Tambrands to cease payments, Beaudoin had received more than 364 weeks of partial benefits. The December 2007 amendment extended the cap to 416 weeks. Me. W.C.B. Rule, ch. 2, § 2(7).

[¶ 9] Tambrands relies on *Abbott v. School Administrative District No. 53*, 2000 ME 201, 762 A.2d 546, to contend that by allowing Beaudoin to benefit from the rule amendment, the hearing officer erroneously revived a final award and extended the new durational limit to a claim that had been extinguished. We disagree.

[¶ 10] In *Abbott*, Abbott was injured at work in 1993, suffering partial incapacity from the injury. 2000 ME 201, ¶ 2, 762 A.2d at 546. The employer unilaterally ceased paying in 1998 after Abbott had received 260 weeks of benefits, which was the statutory maximum number of weeks for partial benefits at that time. *Id.* Abbott obtained a provisional order reinstating her benefits in January of 1999. *Id.* ¶ 2, 762 A.2d at 547. The employer again ceased paying after providing twenty-one days notice pursuant to 39–A M.R.S. § 205(9), and Abbott filed a petition for review. *Id.* ¶¶ 3, 4, 762 A.2d at 547.

[¶ 11] In the meantime, the Board amended its rules to extend the maximum number of weeks to 312, *beginning January 1, 1999. Id.* ¶ 6, 762 A.2d at 548. The hearing officer nevertheless allowed the employer to cease paying because Abbott's entitlement to benefits ended during 1998, *before* the effective date of the amendment. *Id.* ¶ 7, 762 A.2d at 548–49. Abbott appealed, arguing that the entitlement to an additional fifty-two weeks of benefits applies retroactively to all injuries after 1993 regardless of when payment of those benefits had ended. *Id.* We rejected this argument, based on the language of the statute which authorizes that "the 260–week limitation ... be *extended* 52 weeks for every year the board finds" that the statutory criteria are met. *Id.* ¶ 8, 762 A.2d at 549; 39–A M.R.S. § 213(4). We reasoned:

**2.** Employees suffering levels of impairment above the threshold, or those suffering total incapacity, are entitled to continue receiving partial incapacity benefits for the duration of their disability. 39–A M.R.S. §§ 212, 213(1) (2008). The Maine Workers' Compensation Act requires that the threshold be adjusted every two years so that 25% of employees suffering permanent impairment from their partially incapacitating injuries will receive benefits for the duration of their disability, and 75% will not. 39–A M.R.S. § 213(2). "The permanent impairment threshold in section 213 'reflects a legislative intent to preserve longer-term benefits for those employees with the most severe disabilities.'" *Harvey v. H.C. Price Co.*, 2008 ME 161, ¶ 11, 957 A.2d 960, 964 (quoting *Churchill v. Cent. Aroostook Ass'n for Retarded Citizens, Inc.*, 1999 ME 192, ¶ 12, 742 A.2d 475, 479).

The verb "extend" means to "stretch or draw out; hence, to lengthen or prolong either in space or time." Webster's New Collegiate Dictionary (Merriam 1959). By ordinary and customary usage, something that has expired cannot be "extended;" it must be "revived," "reinstated," or "restored."

*Abbott,* 2000 ME 201, ¶ 8, 762 A.2d at 549.

[¶ 12] Tambrands contends that because the decision in Beaudoin's case determining that she had received all benefits to which she was entitled was final, the hearing officer's decision allowing additional benefits constitutes a revival of an extinguished claim rather than an extension of ongoing benefits, and is contrary to our holding in *Abbott.* It also argues that the hearing officer's decision violates the principle of finality, and that there is no basis in law for opening the decree.[3]

[¶ 13] The hearing officer in this case distinguished *Abbott* as follows:

[I]n [*Abbott*] the employee's benefits technically were extinguished prior to the effective date of the 52 week extension and therefore could not be extended. In the instant case, the employee's benefits expired during the year that benefits were ultimately extended retroactively to a time when the employee was still entitled to receive benefits. If the employee's benefits had expired *prior to* January 1, 2007 there would be no question, pursuant to *Abbott,* that her benefits could not be retroactively revived and extended; i.e. her claim would be extinguished.

[¶ 14] We agree with the hearing officer's reasoning. *Abbott* is distinguishable because Beaudoin's right to benefits still existed after the date the Board established as the beginning date for the extension of the durational limit. Had her maximum number of weekly benefit payments been reached before January 1, 2007, *Abbott* would control.

[¶ 15] *Abbott,* however, does not govern the remaining question: whether the hearing officer had the authority to revisit the decree that was entered before the rule was amended, and to apply the amendment. Our review of this issue is limited to assuring that the hearing officer's decision involved no misconception of applicable law and that the application of the law to the facts was neither arbitrary nor without rational foundation. *Tucker v. Associated Grocers of Me. Inc.,* 2008 ME 167, ¶ 7, 959 A.2d 75, 77.

[¶ 16] We address the question by looking again to the statutory provision that authorizes the Board to extend the durational limit on partial benefits, which provides:

4. **Extension of 260–week limitation.** Effective January 1, 1998 and every January 1st thereafter, the 260–week limitation contained in subsection 1 must be extended 52 weeks for every year the board finds that the frequency of such cases involving the payment of benefits under section 212 or 213 is no greater than the national average based on frequency from the latest unit statistical plan aggregate data for Maine and on a countrywide basis, adjusted to a unified industry mix. The 260–week limitation contained in subsection 1 may not be

---

**3.** Tambrands further contends that the implications for reviving an expired claim are significant because the authority to extend benefits is premised on a finding that the frequency of cases involving the payment of benefits during the year in question is no greater than the national average, *see* 39–A M.R.S. § 213(4), and reopening final judgments would render the calculations underlying the extension of benefits meaningless. This contention lacks merit and does not reach the essential question of Beaudoin's entitlement to extended benefits.

extended under this subsection to more than 520 weeks.

39–A M.R.S. § 213(4).

[¶ 17] The statutory language is mandatory. Upon a finding that the "frequency of such cases involving the payment of benefits under section 212 or 213 is no greater than the national average," the Board is obligated to extend the durational limit in subsection one by fifty-two weeks. Thus, when it acts to extend (or not extend) the time limit on partial benefit payments, the Board merely implements the existing legislative directive to do so, consistent with the data. The factual predicate necessary for an extension of the durational limit was in place while Beaudoin's claim was pending. The Board did not have the discretion *not* to extend the time period, but nevertheless, did not act until twelve months into the calendar year and five days after the final decree was entered in this case.

[¶ 18] Accordingly, because Beaudoin's right to receive partial benefits for a specified period of time has its source in the statute, it was neither arbitrary nor without rational foundation to allow her to pursue that right after a final decree was entered. The right existed while her claim was pending, even though the mandatory rule change that effectuated that right was not formally adopted in a timely manner.

The entry is:

The Workers' Compensation Board hearing officer's decision is affirmed.