1997 ME 168

**GUARDIANSHIP OF Charles H. LANDER.**

Supreme Judicial Court of Maine.

Submitted on Briefs May 23, 1997.

Decided July 23, 1997.

R. Lee Ivy, Eaton, Peabody, Bradford & Veague, Bangor, for appellant.

Andrew Ketterer, Carmen L. Coulombe, Asst. Atty. Gen., Augusta, Jay H. Otis, Brewer, for appellee Department of Human Services.

Paul O. Dillon, Corinth, Visitor appointed by Probate Court.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1] Charles H. Lander, a ward in an adult guardianship, appeals from the judgment entered in the Penobscot County Probate Court (*Woodcock, J.*) denying his petition for the termination of guardianship pursuant to 18–A M.R.S.A. § 5–307 (1988). He argues that the court erred by allocating the burden of proof to him as petitioner. Finding no error, we affirm the judgment.

[¶ 2] The facts presented to the Probate Court may be summarized as follows: A petition for appointment of a public guardian for the ward was first filed in June 1990. He did not contest the appointment and an order was entered appointing the Department of Human Services (DHS) as public guardian. DHS filed annual reports with the court. In June 1995, the ward successfully petitioned for a termination of the guardianship. In December 1995, a second petition for the appointment of a public guardian was filed and DHS was appointed as temporary guardian. After a hearing, a judgment was entered in February 1996, granting the petition and again appointing DHS as the public guardian.

[¶ 3] In May 1996, the ward filed the present petition for the termination of guardianship alleging that he is no longer incapacitated. DHS objected to the petition because it fails to allege any change in circumstances. The court appointed an attorney and a visitor to represent the interest of the ward. After a preliminary hearing, the court ruled that, as petitioner, the ward bears the burden of proof. He declined to offer any evidence at the final hearing and the court entered a judgment denying his petition for the termination of the guardianship. The ward appeals.

[¶ 4] The general rule places the burden on petitioners and other moving parties to prove the facts they allege. *Nichols v. Cantara & Sons,* 659 A.2d 258, 262 (Me. 1995). The Probate Code provides that "[u]nless displaced by the particular provisions of this Code, the principles of law and equity supplement its provisions." 18–A M.R.S.A. § 1–103 (1981). The ward argues that the general rule does not apply in a petition to terminate an adult guardianship because the statute has reallocated the burden to the guardian. He relies on the following language in the statute:

> Before removing a guardian, accepting the resignation of a guardian, or ordering that a ward's incapacity has terminated, the court, *following the same procedures to safeguard the rights of the ward as apply to a petition for appointment of a guardian,* may send a visitor to the residence of the present guardian and to the place where the ward resides or is detained, to observe conditions and report in writing to the court.

18–A M.R.S.A. § 5–307(c) (1981) (emphasis added). The statute is ambiguous. It is unclear whether the underlined phrase merely modifies the sending of "a visitor to the residence," or incorporates all procedural requirements for the initial appointment. When the plain words of the statute render its meaning ambiguous, we examine other indicia of legislative intent, including legislative history. *Jordan v. Sears, Roebuck & Co.,* 651 A.2d 358, 360 (Me.1994). The intent of the language in question is expounded on in the legislative study that preceded the adoption of the 1979 revision to Maine's Probate Code.

> Subsection (c) applies to these proceedings the same procedural safeguards provided for the guardianship appointment procedures (see UPC 5–303) *and* authorizes the court to use a visitor as in the appointment proceedings.

Maine Probate Law Revision Commission, Report of the Commission's Study and Recommendations Concerning Maine Probate Law, at 544 (October, 1978) (emphasis added). The commission report suggests that the Legislature intended section 5–307 would provide for the appointment of a visitor and would provide the same procedural safeguards that apply in an appointment proceeding.

**[¶ 5]** In an effort to avoid the application of the general rule, the ward argues that section 5–303 allocates the burden of proof to the person petitioning for appointment of a guardian and, because of section 5–307(c), that same procedural safeguard is required in a termination proceeding. His argument, however, ignores the fact that section 5–303 does not expressly allocate the burden of proof in appointment proceedings. The original enactment of § 5–303 enumerated several procedures that can be considered safeguards: (1) the requirement of a hearing; (2) the discretionary appointment of an attorney; (3) examination by a physician acceptable to the court; (4) submission of a written report by the physician; (5) the discretionary appointment of a visitor; (6) submission of a written report by the visitor; (7) the right to be present at the hearing, to be represented, to present evidence, to cross-examine witnesses, and to request a closed hearing. The Legislature, however, did not allocate the burden of proof in the original enactment or in any of the subsequent amendments to section 5–303.[1] Thus, the general rule prevails in an appointment proceeding.

**[¶ 6]** Next, the ward argues that even though the Legislature has not expressly reallocated the burden of proof, reallocation is consistent with the legislative intent. He relies on the following comment to the statute: "In all review proceedings the welfare of the ward is paramount." Unif. Probate Code § 5–307 comment (1969). He argues that because the welfare of the ward is paramount, and because guardianship is a sub-

stantial restriction of liberty, the ability to seek its removal should be encouraged. The State points out, however, that such an unwarranted extrapolation from the comment would subject guardians to the time and expense of defending repeated petitions for termination by wards who have no burden beyond an allegation in the petition. There is no statutory limit on the number or frequency of filings that a ward can bring,[2] and we note that the Legislature considered the possibility of frequent filings when it expressly allocated the burden of proof to guardians of minors.

> The guardian has the burden of showing by a preponderance of the evidence that continuation of the guardianship is in the best interest of the ward. If the court does not terminate the guardianship, the court may dismiss subsequent petitions for termination of the guardianship unless there has been a substantial change of circumstances.

18–A M.R.S.A. § 5–212(d) (Supp.1996). With respect to minors, the Legislature placed the burden of proof on the guardian but gave the court discretion to adjust the burden in subsequent petitions by requiring the petitioner to show a substantial change of circumstances. In the present context, there is nothing to suggest a similar legislative approach with respect to section 5–307.

**[¶ 7]** Because the Legislature neither directly nor indirectly allocated the burden of proof in termination proceedings for adult guardianships, the general rule applies and places the burden on the moving party.

---

1. Subsequent amendments, P.L.1985, ch. 440; P.L.1989, ch. 858, § 2; P.L.1993, ch. 652, § 1; P.L.1995, ch. 203, § 1, have provided the following safeguards (listed in summary form): (1) The person nominated as guardian must file a plan specifying how the ward's financial, housing, social and medical needs will be met; (2) Unless the allegedly incapacitated person is represented the court must appoint a visitor, guardian ad litem, or attorney; (3) If the person contests the appointment, the court must appoint an attorney; (4) The examining physician may be a psychologist, and the report must provide diagnoses, a description of the person's mental and functional limitations and prognoses; (5) The obligations of the visitor or guardian ad litem are more specifically delineated; (6) All reports and plans must

be submitted at least 10 days before any hearing on the petition; (7) When there is an allegation of abuse, neglect or exploitation of the person, the court may hear testimony of the person in chambers with only the guardian ad litem and counsel present.

2. The original limitation was deleted by a 1979 amendment:

> An order adjudicating incapacity may specify a minimum period, not exceeding one year, during which no petition for an adjudication that the ward is no longer incapacitated may be filed without special leave.

18–A M.R.S.A. § 5–307(b) (repealed 1979).