STATE OF MAINE                          BUSINESS AND CONSUMER COURT

Cumberland, ss.

CLAIMANTS REPRESENTED BY
COMMUNICATIONS WORKERS OF AMERICA, LOCAL 1400,
and INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL 2327,

                                    Petitioners,

            v.                              Docket Nos. BCD-AP-15-06 and
                                            BCD-AP-16-01 (consolidated)

MAINE UNEMPLOYMENT INSURANCE COMMISSION,

                                    Respondent,

FAIRPOINT LOGISTICS, INC. and NORTHERN NEW ENGLAND
TELEPHONE OPERATIONS LLC
(d/b/a FAIRPOINT COMMUNICATIONS-NSE),

                                    Parties-in-Interest.

                        DECISION ON APPEAL

        These appeals are from decisions of the Maine Unemployment Insurance Commission

["the Commission"] denying unemployment compensation benefits to the Petitioners, former

or current employees of the Parties-in-Interest who were involved in a labor dispute during

late 2014 and early 2015. The Petitioners contend that the Commission erred by: 1) placing

the burden of proof as to whether there was a stoppage of work on the employees; 2) failing to

apply the "substantial curtailment" standard in determining whether a stoppage of work had

occurred; and 3) making factual findings that were unsupported by substantial evidence in the

record. Petitioners contend that the Commission decisions should be vacated and that the

court should order that they be granted unemployment benefits. The Commission and the

Parties-in-Interest contend that the Commission decisions were correct and should be affirmed.

For the reasons discussed below, the court vacates the decisions and remands the Petitioners' claims at issue in these cases to the Commission for further proceedings.

*Background*

Petitioners are employees of Parties-in-Interest Fairpoint Logistics, Inc. and Northern New England Telephone Operations LLC (collectively "the Employers"). For purposes of collective bargaining, Petitioners are represented by the International Brotherhood of Electrical Workers, Local 2327 or the Communication Workers of America, Local 1400 (collectively, the "Unions"). *See R.* 23-41, 1699-1700.

On October 17, 2014, Petitioners and other employees of the Employers represented by the Unions went on strike. R. 335. Thereafter, Petitioners applied for unemployment compensation. Petitioners were initially denied benefits by the Maine Department of Labor, Bureau of Unemployment Compensation ("Bureau"), which found that Petitioners' unemployment was due to a stoppage of work that existed because of a labor dispute within the meaning of 26 M.R.S.A. § 1193(4). R. 226-231, 338-339. Petitioners appealed to the Division of Administrative Hearings ("Division"), which consolidated the appeals. R. 233. The Division conducted a two-day adjudicatory hearing on March 30 and 31, 2015 pursuant to 26 M.R.S.A. § 1194(3) and 1082(4-A). *See R.* 1243-1671.

On June 5, 2015, the Hearing Officer issued a decision reversing the Bureau's decisions and allowing the Petitioners benefits from October 19, 2014, if otherwise eligible and qualified. *See R.* 201. The Hearing Officer determined that the Employers did not experience a stoppage of work due to the Petitioners' involvement in a labor dispute and that the Employers avoided the stoppage, at least in part, through the use of personnel hired to perform the work of the striking employees within the meaning of 26 M.R.S.A. § 1193(4). R. 197-200. The Employers

timely appealed the Hearing Officer's decision to the Commission. R. 134-190. The Commission determined that no further hearing was warranted and decided the Employers' appeal on the existing evidentiary record. R. 5.

In a Decision dated October 1, 2015, the Commission, acting through the Chairman of the Commission without the participation of the employee or employer representative members,[1] set aside the Hearing Officer's Decision and determined that Petitioners were disqualified from receiving unemployment benefits because there was a stoppage of work pursuant to 26 M.R.S.A. § 1193(4). *See* Me. Unemp't. Ins. Comm'n. Dec. No. 15-C-03849 at 18-19 (claimant Michael Beecy),[2] R. 19-20. Section 1193(4) provides, in pertinent part, that "[a]n individual shall be disqualified for benefits:

> **4. Stoppage of Work.** For any week with respect to which the deputy … finds that the claimant's total or partial unemployment is due to a stoppage of work that exists because of a labor dispute at the … premises at which the claimant is or was employed, or there would have been a stoppage of work had substantially normal operations not been maintained with other personnel previously and currently employed by the same employer and any other additional personnel that the employer may hire to perform tasks not previously done by the striking employees.

26 M.R.S.A. § 1193(4) (2015).

A.  The Commission's Decision

The Commission in its October 1, 2015 Decision determined that Petitioners "bear the burden of proof on the issue of whether there was a stoppage of work or would have been a stoppage of work had substantially normal operations not been maintained within the meaning

---

[1] The Commission chair, whose title by statute is "chairman," *see* 26 M.R.S.A. § 1081(1) (2015), presided over the Employers' appeal without the participation of the employer or labor representative members of the Commission because the employer representative position was vacant at the time. R. 4-5 (*citing* 26 M.R.S.A. § 1081(3) (2015).

[2] The Commission Decision contained in the record on appeal happens to have been rendered in connection with the claim of Petitioner Michael Beecy, *see* R. 2, but the same analysis resulted in the same Commission decisions in the claims of all of the Petitioners.

3

of 26 M.R.S.A. § 1193(4)." R. 11. The Commission reasoned that Petitioners, as the parties who initiated the departure from employment, should bear the burden of proving their eligibility for benefits under section 1193(4) consistent with "general principles governing the adjudication of unemployment disputes[.]" R. 11-12. While the Commission's Decision placed the burden of proof on Petitioners, the Decision "recognize[d] that the burden of production falls upon the Employers, as the Employers are the keepers of the records necessary to determine whether there was a stoppage of work or a potential stoppage of work." R. 12. The Commission determined that the Employers had met its burden of production. *Id.*

The Commission Decision then addressed the meaning of the term "stoppage of work" within section 1193(4) in light of the legislative history of the statute and a 1985 amendment as well as Maine court decisions interpreting section 1193(4). The Commission determined that "the proper standard for determining the existence of a work stoppage ... is the failure to maintain substantially normal operations standard." R. 14. In adopting this interpretation, the Commission expressly rejected the "substantial curtailment" standard that the Unions on behalf of the claimants contended should govern the determination whether a stoppage of work occurred, noting that defining a work stoppage in terms of "substantial curtailment of operations" could result in an internal consistency with the "substantially normal operations" standard in the second prong of the statute. (*Id.* Accordingly, the Commission applied a multi-factor analysis, evaluating the following enumerated factors to determine whether there was a stoppage of work, i.e., a failure to maintain substantially normal operations:

1. The strike's impact on business operations and production, to include evaluation of the following:
   a. Marketing and installation
   b. Repairs
   c. Construction
   d. Maintenance of Equipment

4

      e.  Number of employees as compared with normal levels

2.  The strike's impact on customer satisfaction

3.  The strike's impact on revenue[.]

R. 14-15.  The Commission determined, in pertinent part, that there was: a 30 to 35% reduction of operations at the Employers' facilities; a cessation of aggressive marketing by the Employers and commensurate reduction in new customers; approximately double the usual number of unresolved repair orders during the strike; a curtailment of new construction, with very little discretionary construction work; a sharp curtailment of preventative maintenance; a decrease in the number of employees working during the strike, including highly skilled employees with advanced training and years of experience; a rise in customer complaints during the strike; and a failure to realize substantially normal revenue during the strike period. R. 15-17.

In laying out this analysis, the Commission noted that bad winter weather "exacerbated the effect of a work stoppage," but concluded that "the root cause of the delay [in carrying out repairs or installing services] was the strike, which began prior to the onset of the storms." R. 17.  Accordingly, the Commission "conclude[d] that the employers were not able to maintain substantially normal operations during the strike" and that Petitioners "have not met their burden to prove that there was no work stoppage in the case at bar." R. 19.  Finally, the Commission wrote that even had it decided "that the burden of proof rests with the employers, the employers presented substantial credible evidence that a work stoppage occurred when the claimants struck on October 17, 2014." *Id.*

Based on its view of the evidence, the Commission decided "that the employers were not able to maintain substantially normal operations during the strike.  Based on a totality of evidence, the Chairman concludes that the claimants have not met their burden to prove that

5

there was no work stoppage in the case at bar." R. 19. This conclusion made it unnecessary to address the question under the alternative prong section 1193(4) of whether there would have been a stoppage of work had the Employers not maintained "substantially normal operations."

The Commission ruled that the Petitioner claimants were disqualified from benefits for the duration of the strike. R. 19-20.

B. The Rule 80C Appeals

Pursuant to Rule 80C of the Maine Rules of Civil Procedure, Petitioners filed a timely appeal of the Commission's October 1, 2015 Decision in the Maine Superior Court. The appeal was then transferred to the Business and Consumer Court and assigned Docket No. BCD-AP-15-06. Thereafter, the Commission and counsel became aware of seven additional claimants who had not been issued individual decisions due to an administrative error. *See R.* 1694. The Bureau issued a decision on or about October 29, 2015 denying benefits to those claimants based upon the Commission's Decision. R. 1791-1792. The additional Petitioners appealed to the Division, which denied benefits based on the Commission's October 15, 2015 Decision No. 15-C-03849, and subsequently to the Commission, which affirmed the denial of benefits on the same analysis as in the earlier round of denials.[3] *See* R. 1694-1696 (Me. Unemp't. Ins. Comm'n. Dec. No. 15-C-07223 (Nov. 16, 2015) (claimant Mark R. Rowe)).[4] Those seven claimants filed a timely appeal that was also transferred to this court and assigned Docket No. BCD-AP-16-01. The parties have agreed that the issues and the material facts are the same in both cases, and that the cases should be consolidated for all purposes in this appeal.

---

[3] The additional Petitioners' appeal to the Commission was also decided solely by the Commission Chairman. *See* R. 1696.

[4] As is the case with the initial round of Commission decisions on hundreds of claimants, the subsequent Commission decisions on all seven claimants are not all in the record, *see n. 2,* supra. The exemplar decision in the record involves Petitioner Mark R. Rowe. *See* R. 1694-96.

6

All parties have submitted briefs and an extensive record. Oral argument on the appeals was held August 1, 2016, at which point this court took the appeals under advisement.

*Standard of Review*

In reviewing decisions of the Commission, "it is critical that [the court] keep in mind the purposes of the Employment Security Act." *Brousseau v. Me. Emp't Sec. Comm'n*, 470 A.2d 327, 329 (Me. 1984). Because the Act is remedial in nature, it "dictates a liberal construction in favor of the employee." *Id.*

The court reviews the administrative record "to determine whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson v. Me. Unemployment Ins. Comm'n*, 1998 ME 177, ¶ 6, 714 A.2d 818. The court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might accept as adequate to support the resultant conclusion.'" *Sinclair Builders, Inc. v. Me. Unemployment Ins. Comm'n*, 2013 ME 76, ¶ 9, 73 A.3d 1061 (quotation omitted). The fact that the record contains inconsistent evidence or that inconsistent conclusions could be drawn from the record does not prevent the agency's findings from being supported by substantial evidence. *In re Me. Clean Fuels, Inc.*, 310 A.2d 736, 741 (Me. 1973). The court will not disturb a decision of the Commission "unless the record before the commission compels a contrary result." *McPherson*, 1998 ME 177, ¶ 6, 714 A.2d 818.

The court reviews "de novo issues of statutory interpretation." *Sinclair*, 2013 ME 76, ¶ 10, 73 A.3d 1061. When interpreting a statute, the court's single goal is to give effect to the Legislature's intent in enacting the statute. *Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 19, 107 A.3d 621. In determining the Legislature's intent, the court's first step is to "look to the plain meaning of the statute, interpreting its language to avoid absurd, illogical or inconsistent

7

results." *Sinclair*, 2013 ME 76, ¶ 10, 73 A.3d 1061. In carrying out this analysis, the court considers the statutory scheme as a whole to achieve a harmonious result. *See Town of Ogunquit v. Dep't of Pub. Safety*, 2001 ME 47, ¶ 7, 767 A.2d 291.

If a statute is ambiguous, the court may look to legislative history and other extraneous aids in interpretation of the statute. *Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, 60 A.3d 1241 (quotation omitted). "A statute is ambiguous if it is reasonably susceptible to different interpretations." *Id.* When an agency interprets an ambiguous statute that is within its area of expertise, the court will defer to that interpretation unless it is unreasonable. *Cobb*, 2006 ME 48, ¶ 13, 896 A.2d 271.

However, "[a]n agency interpretation of a relevant provision which conflicts with the agency's earlier interpretation is entitled to considerably less deference than a consistently held agency view." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) (quotation omitted); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012) (observing deference would be inappropriate where the agency's interpretation (1) was erroneous or inconsistent with the regulation, or (2) "does not reflect the agency's fair and considered judgment on the matter in question" because it (a) conflicts with a prior interpretation, or (b) is "nothing more than a convenient litigating position").

*Discussion*

Petitioners' appeal raises three primary challenges to the Commission's decisions denying their claims. Petitioners allege: 1) the Commission committed an error of law by failing to apply the "substantial curtailment" standard for determining whether a work stoppage occurred; 2) the Commission improperly allocated the burden of proof as to whether a stoppage of work occurred under section 1193(4); and 3) the Commission made factual findings

8

unsupported by substantial evidence. The court addresses the first two arguments in turn. The third argument, regarding the Commission's evaluation and weighing of the evidence, need not be addressed in light of the remand.

    A.  The Commission's Interpretation of the Stoppage of Work Standard Under 26 M.R.S.A. § 1193(4).

The operative statutory provision, title 26, section 1193(4), Maine Revised Statutes, disqualifies striking workers from receiving benefits under two alternative circumstances: 1) where the claimant's "total or partial unemployment is due to a stoppage of work that exists because of a labor dispute at the ... premises at which the claimant" was employed; or 2) "there would have been a stoppage of work had substantially normal operations not been maintained with other personnel previously and currently employed by the same employer and any other additional personnel that the employer may hire to perform tasks not previously done by the striking employees." 26 M.R.S.A. § 1193(4) (2015).

The second clause, relating to maintenance of "substantially normal operations," came into the statute by means of a 1985 amendment. *See* L.D. 209 (112th Legis. 1985) ("An Act to Restrict the Payment of Unemployment Compensation Benefits to Workers Who are on Strike"). Prior to this Amendment, the statute provided, in pertinent part, that an employee was disqualified from receiving unemployment benefits "[f]or any week with respect to which the deputy ... finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the ... premises at which he is or was employed. 26 M.R.S.A. § 1193(4) (1983). The 1985 amendment eliminates the requirement that an actual work stoppage exist and disqualifies a claimant if "there would have been a stoppage of work had substantially normal operations not been maintained," without the use of additional personnel hired to perform the work of the striking employees.

9

In enacting the 1985 Amendment, the Legislature explained that it intended to "continue[] the present practice under the work stoppage test of allowing striking workers to receive benefits if the employer maintains a substantially normal level of operations by hiring additional employees to perform the striking workers' tasks." L.D. 209, Statement of Fact at Page 4-L.D. (112th Legis. 1985).

The term "stoppage of work" is not defined in the statute, but the Maine Law Court in *Bilodeau v. Maine Employment Security Commission* indicated that "the term 'stoppage of work' refers generally to a cessation of plant operations." 153 Me. 254, 260, 136 A.2d 522, 526 (1957). The Law Court has not addressed the meaning of "stoppage of work" since *Bilodeau.*

Subsequent Maine Superior Court decisions have interpreted the term "stoppage of work" to mean a "substantial curtailment" of operations, and a "substantial reduction in service." *See Laney v. Maine Dep't of Labor*, 1994 Me. Super. LEXIS 122 at *4 (Cum. Cty., Brodrick, J.) ("a substantial curtailment of operations; *Aden v. Maine Emp't. Sec. Comm'n*, 1983 Me. Super. LEXIS 140 at *4 (Ken. Cty., Clifford, J.) (" substantial reduction in service"); *Boutin v. Maine Dep't of Manpower Affairs*, 1980 Me. Super LEXIS 100 at *9 (Ken. Cty., Wathen, J.) ("substantial curtailment"). In *Boutin*, the Superior Court specifically noted that the "cessation of plant operations" reference in *Bilodeau* did not mean that the plant had to be completely shut down in order for a work stoppage to exist. 1980 Me. Super. LEXIS 100 at *9.

Petitioners assert the Commission erred by failing to apply at least the "substantial curtailment test," if not the "cessation of operations" test for determining whether a work stoppage exists. The Petitioners note that the weight of authority around the country holds that the existence of a work stoppage is determined by whether there is a "substantial curtailment" of operations. *See, e.g.*, Annot., *Construction of Phrase "Stoppage of Work" in Statutory*

10

*Provision Denying Unemployment Compensation Benefits During Stoppage Resulting from Labor Dispute*, 61 A.L.R. 693, at §§ [2a], [5a] (2016) ("There is also general agreement among the courts that a 'stoppage of work' occurs when there has been a 'substantial curtailment' of the employer's operations, although the measurement of what constitutes a sufficient 'substantial curtailment' has been regarded as an issue to be determined on the basis of the facts involved in each particular case"); *see also Haw. Teamsters & Allied Workers, Local 996 v. Dep't of Labor & Indus. Relations*, 132 P.3d 368, 375 (Haw. 2006) (interpreting "stoppage of work" to mean a "substantial curtailment"); *Boguszewski v. Comm'r of Dep't of Emp't & Training*, 572 N.E.2d 554, 557 (Mass. 1991) (Massachusetts has "adopted a general definition" of "stoppage of work," that "requires a 'substantial curtailment' of the employer's 'operations'"); *Lourdes Med. Ctr. of Burlington Cty. v. Bd. of Review*, 963 A.2d 289, 298-99 (N.J. 2009).

Petitioners contend that the Commission's application of the "failure to maintain substantially normal operations" standard was an error of law, because the "substantially normal operations" standard is applied only to determine whether a work stoppage has come to an end, not to determine whether a work stoppage exists. *See* Annot., *Construction of Phrase "Stoppage of Work" in Statutory Provision Denying Unemployment Compensation Benefits During Stoppage Resulting from Labor Dispute, supra*, 61 A.L.R. 693 at § [6a]. *See also G.H. Bass & Co. v. Maine Emp't. Sec. Comm'n*, Docket No. KENSC-CV-75-89 (Me. Super. Ct., Ken. Cty. ____).[5]

Finally, Petitioners contend that the legislative history of section 1193(4) and its 1985 amendment does not support the Commission's Decisions, as the amendment did not purport to redefine the term "stoppage of work" as it had previously been construed in *Bilodeau* and *Boutin*.

---

[5] Petitioners attached the first three pages of this unreported Kennebec County Superior Court decision as Attachment B to their opening brief. The attached portion does indicate that the court deemed the test of when a work stoppage ends to be when the employer's facility resumes "substantially normal operations." An online LEXIS search indicates that the phrase "substantially normal operations" appears in the LEXIS library of Maine court opinions only in the above-cited *Laney* case.

11

The Employers and the Commission respond that the Commission's interpretation of a stoppage of work was not unreasonable because the interpretation mirrors the language from the 1193(4) and reads the statute as a harmonious whole. They also contend that use of the "substantial curtailment" standard for the first prong could lead to inconsistent results, with a different standard being utilized depending on whether or not the employer attempted to maintain operations with non-striking and temporary personnel. Furthermore, they argue that Maine courts have only used the "substantial curtailment" standard in dicta, or where the proper standard was not a contested issue. To the extent other jurisdictions use the "substantial curtailment" standard, they contend that this is not binding on Maine courts and, in any event, is based on different statutory language.

The primary justification for the Commission's standard is that the statutory language in Maine—along with the Kansas statute—is unique in that it includes explicit language providing that a "stoppage of work" does not occur when "substantially normal operations" are maintained. *Compare* 26-M.R.S.A. § 1193(4), *and* Kan. Stat. Ann. § 44-706(d) (2016) (referencing maintenance of "normal operations"), *with e.g.*, Haw. Rev. Stat. § 383-30(4) (2016) (only listing disqualification due to stoppage of work because of a labor dispute); Mass. Ann. Laws ch. 151A, § 25(b) (2016) (same); N.J. Rev. Stat. § 43:21-5(d) (2016) (same); N.J. Admin. Code § 12:17-12.2(a)(2) (2016) (defining stoppage of work to mean a "substantial curtailment of work").

In this court's view, the Petitioners' point about "substantially normal operations" being the traditional test of whether a work stoppage has come to an end helps prove the Commission's argument that the existence of a work stoppage can be measured by an employer's failure to maintain substantially normal operations. If, as Petitioners correctly

12

point out, case law in Maine and elsewhere indicates that a "substantial curtailment" is deemed to end when the employer resumes "substantially normal operations," it would follow logically that a "substantial curtailment" means a level of operations that falls below "substantially normal operations."

Otherwise, there would be an undefined gap between "substantially normal operations" and "substantial curtailment" that the case law cannot have meant to create. A work stoppage either exists or it does not, so there must be a single line of demarcation between existence and non-existence. This in in turn must mean that "substantial curtailment" and "substantially normal operations" are in fact antonyms—the two sides of the same level of operations coin.

And that may explain how the phrase "substantially normal operations" entered the Maine statutes by means of the 1985 amendment. As Petitioners contend, the Legislature, in enacting the 1985 amendment, did not purport to change the definition of "stoppage of work," as interpreted in *Bilodeau, Boutin* and *Aden*. However, the Legislature did not pick the new phrase, "substantially normal operations," out of the air. The 1985 amendment plainly indicates that an employer that maintains "substantially normal operations" is not experiencing a stoppage of work, just as an employer that has resumed "substantially normal operations" is no longer experiencing a stoppage of work, which is the law. Therefore, if a stoppage of work does not exist when "substantially normal operations" are maintained, it is logical to infer that a stoppage of work does exist when an employer fails to maintain substantially normal operations because of a strike.

As mentioned above, any other interpretation of the statute creates an undefined gap between "substantial curtailment" of operations and "substantially normal operations" that the Legislature cannot have intended to create. This court deems the two terms to be mutually

13

exclusive and contiguous antonyms, meaning that any level of operations falling short of "substantially normal operations" is a "substantial curtailment," and, in turn, that any "substantial curtailment" in operations is by definition a "failure to maintain substantially normal operations."

Accordingly, the court concludes that the Commission's application of the "failure to maintain substantially normal operations" standard in determining whether a stoppage of work exists was a permissible application of the statute, albeit one that is semantically, but not substantively, different from the standard previously applied by the Commission in the same context. This different interpretation does not render the Commission's decision erroneous as a matter of law, especially given the lack of any substantive difference between the former test and the newly announced test.

Accordingly, the court concludes that the Commission did not err in applying a "failure to maintain substantially normal operations" standard in deciding whether a work stoppage existed at various times, but did err in assuming that its new phrasing of the standard reflects a substantive departure from the "substantial curtailment" standard. The next issue is whether the Commission properly allocated to Petitioners the burden of proving that a work stoppage did not exist because of the strike.

B. The Commission's Allocation of the Burden to Prove the Existence of a Work Stoppage

Petitioners argue that the Commission's allocation to them of the burden to prove they should not be disqualified under section 1193(4) was an error of law because the employer—or in some instances the Commission—bears the burden to prove a claimant is disqualified from receiving benefits. Petitioners analogize placing the burden of proof on the employer under section 1193(4) to the placement of the burden on the party asserting an affirmative defense.

14

The Commission responds that the burden of proof was properly allocated to Petitioners, because a claimant has the burden to prove his or her eligibility for benefits. In support, it argues that since the Petitioners made the affirmative choice to strike, it was reasonable to place the burden of proof on them. Furthermore, the Commission points out that it did decide that the Employers bore the burden of production on the work stoppage issue. The Commission contends that, even if it erred in allocating the burden of proof, the Commission's Decision should be affirmed as it was supported by substantial evidence.

The Employers' arguments echo those of the Commission and emphasize the contention that the burden of proof is immaterial, given that the Commission stated that "even if the Chairman were to ... find that the burden of proof rests with the employers, the employers presented substantial evidence that a work stoppage occurred when the claimants struck on October 17, 2014." R. 18. The Employers also contends that the burden of proof is immaterial because Petitioners challenge the conclusions drawn from the facts, not the facts themselves.

Determination of the burden of proof is a question of law. *See, e.g., Bisco v. S.D. Warren Co.*, 2006 ME 117, ¶¶ 10-11, 908 A.2d 625; *Guardianship of Lander*, 1997 ME 168, ¶¶ 5-7, 697 A.2d 1298; *Martel v. U.S. Gypsum Co.*, 329 A.2d 392, 394-95 (Me. 1974).

For several reasons, the court concludes that the Commission erred in placing the burden on the Petitioners to prove that there was not a work stoppage because of the labor dispute.

The Commission's decision to place the burden to prove the existence of a stoppage of work on the Petitioners appears to be based on the view that, "[a]s the parties who initiated the departure from employment, general principles governing the adjudication of unemployment disputes dictate that the claimants have the burden to prove their eligibility ..."

15

R. 11). Although a claimant does have the burden to prove eligibility for benefits, the Commission erred in assuming that the Petitioners must therefore have the burden to prove that they should not be disqualified from benefits under section 1193(4), which is essentially what the Commission required in requiring Petitioners to prove the non-existence of a stoppage of work. The statutory unemployment compensation framework does not put the burden on a claimant regarding every issue; instead, which party bears the burden—and whether the burden is one of production or persuasion--depends on the issue at hand.

The Commission purported to assign "the burden of production" to the Employers, but it is not clear that it actually did so in the evidentiary sense. The Commission Decision describes the burden of production as follows:

> The Chairman recognizes that the burden of production falls upon the Employers, as the Employers are the keepers of the records necessary to determine whether there was a stoppage of work or a potential stoppage of work. The Employers have satisfied their burden of production in this case. The claimants obtained the evidence which they required to present their case. R. 12.

What the Commission appears to characterize as the "burden of production" seems to refer to a duty to produce documents in discovery rather than an evidentiary burden of production. In the evidentiary context, the burden of production refers to the burden to present some evidence on an issue, in contrast to the burden of persuasion on an issue, and does not refer to producing documents to the opposing party in discovery. *See Brady v. Cumberland County*, 2015 ME 143, ¶ 36-39, 126 A.3d 1145 (employee and employer's respective burdens of production in employment discrimination cases); *Bisco v. S.D. Warren Co.*, 2006 ME 117, ¶¶ 12-14, 908 A.2d 625 (workers' compensation claimant's burden of production on impairment).

Even assuming the Commission did assign the evidentiary burden of production to the Employers on the work stoppage issue by requiring the Employers to make some initial

16

showing that a work stoppage occurred, it plainly assigned the burden of persuasion on that issue to the Petitioners. *See* R. 11 (Petitioners "bear the burden of proof on the issue of whether there was a stoppage of work or would have been a stoppage of work had substantially normal operations not been maintained . . .)." In the court's view, the Commission allocated the burden to the wrong party: the Employers should have been assigned the burden of persuasion on the issue of whether the Petitioners should be disqualified by virtue of the section 1193(4) stoppage of work provision.

The claimant to unemployment compensation does bear the burden on certain issues, such as eligibility for benefits under section 1192. *See McKenzie v. Maine Emp't. Sec. Comm'n.*, 453 A.2d 505, 509 (Me. 1982) ("A claimant must establish eligibility for each week for which benefits are claimed.")

However, on issues such as disqualification, the burden generally shifts to the employer to prove grounds for disqualification, and in certain instances, if the employer meets that burden, the burden shifts back to the claimant to prove an exception to the disqualification. For example, even if a claimant meets the conditions for eligibility under section 1192, if the employer proves that a claimant left work voluntarily and therefore should be disqualified, the claimant is disqualified unless the claimant can prove good cause for leaving employment. *See Kilmartin v. Maine Emp't. Sec. Comm'n*, 456 A.2d 412, 414 (Me. 1982). Which party bears the burden on an issue in an unemployment compensation case depends on the issue.

As noted above, once a claimant shows that the claimant is eligible for benefits, the burden of persuasion is on the employer to prove grounds for disqualifying the claimant. For example, the Law Court has held that the employer bears the burden to show that the claimant is disqualified because he or she was discharged for misconduct within the meaning of 26

17

M.R.S.A. § 1193(2). *See, e.g., Sprague Elec. Co. v. Me. Unemployment Ins. Comm'n,* 536 A.2d 618 (Me. 1988) (employer had failed to satisfy its burden of proof that the employee it had terminated engaged in misconduct). *See also Fountain v. Me. Unemployment Ins. Comm'n,* 2013 Me. Super. LEXIS 167, at *10-11 (employer bears burden of proving employee's conduct meets statutory definition of misconduct). Similarly, the Commission has the burden to prove that a claimant is disqualified under 26 M.R.S.A. § 1193(3) because he or she "refused to accept a referral to a suitable job opportunity when directed to do so by a local employment office." *Tobin v. Me. Employment Sec. Comm'n,* 420 A.2d 222, 225-26 (Me. 1980).

Although the Law Court has not decided which party bears the burden of persuasion in connection with work stoppage issues arising under section 1193(4), the very language of the statute answers the question. Section 1193(4) states that a claimant may be disqualified only if the deputy "*finds* that the claimant's total or partial unemployment is due to a stoppage of work that exists because of a labor dispute . . ." 26 M.R.S. § 1193(4)(emphasis added). It logically cannot be a claimant's burden to negate a necessary affirmative finding.[6]

Just as the burden is on the employer or the Commission to prove grounds for disqualification for misconduct or refusal to accept work under subsections (2) and (3) of section 1193, the burden under subsection (4) logically must be on the employer, as the proponent of disqualification, to prove grounds for disqualification under one or the other of the section 1193(4) alternatives.

---

[6] The illogic in assigning the burden on section 1193(4) issues to the Petitioners is most evident in light of the language of the second prong of section 1193(4): "there would have been a stoppage of work had substantially normal operations not been maintained with other personnel previously and currently employed by the same employer and any other additional personnel that the employer may hire to perform tasks not previously done by the striking employees." Just to define specifically the points that a claimant's proof would have to cover to meet the burden on that issue seems impossible.

18

This allocation of the burden finds further logical support in the general principle of law that "[t]he party who asserts the affirmative of the controlling issues in the case, whether or not he is the nominal plaintiff in the action, bears the risk of non-persuasion." *Markley v. Semle*, 1998 ME 145, ¶ 5, 713 A.2d 945 (declaratory judgment action). Most, if not all, of the statutory grounds for disqualification enumerated in section 1193—such as misconduct resulting in discharge, refusal to accept work, criminal conviction resulting in discharge, receipt of a pension, making a false statement, receipt of other remuneration—require affirmative proof of grounds for disqualification. As a matter of both logic and due process, once a claimant has made a showing of eligibility, the burden should rest upon the employer (or the Commission, as the case may be), as the proponent of disqualification, to prove that the claimant should be disqualified, rather than upon the claimant to prove a negative.

Yet another justification for putting the burden to show grounds for disqualification on the employer (or the Commission) lies in the remedial nature of the statute. *Tobin v. Me. Employment Sec. Comm'n, supra*, 420 A.2d at 226. In *Tobin*, in rejecting the Commission's contention that the burden of proving unsuitability of a job referral-direction falls upon the claimant, the Law Court even said, "*Any* disqualification, being penal in nature, must be strictly reviewed." *Id.* (citation omitted) (emphasis added). That statement, in itself, confirms that placing the burden on claimants to prove that a work stoppage did not exist is contrary to the letter and purpose of the statute, and also at odds with the weight of authority around the country.[7]

---

[7] *See Quincy Corp. v. Aguilar*, 704 So.2d 1055, 1065 (Fla. Dist. Ct. App. 1997) ("If the employer does not meet its burden of proving to the appeals referee and the Commission and the labor dispute is the current cause of the unemployment, then the disqualification provision does not apply..."); *Dalton Brick & Tile Co. v. Huiet*, 115 S.E.2d 748, 750 (Ct. App. Ga. 1960) (employer in case involving labor dispute disqualification provision has burden of proof "since the general statutory enactment is one granting benefits upon proof of unemployment and other conditions of eligibility, an employer seeking to deny benefits to one otherwise eligible because of an excepting

19

Accordingly, the court concludes that the Commission erred as a matter of law in assigning the burden to prove the existence of a work stoppage because of a labor dispute to the claimants.

The analysis turns to the question of how this court should respond to the error.

Remand for reconsideration may be appropriate where the wrong burden of proof was applied. *See Me. Eye Care Assocs. P.A. v. Gorman*, 2006 ME 15, ¶¶ 17-18, 890 A.2d 707 (trial court's acknowledgment that case presented contrary evidence on material facts counsels against inferring that court would have made same findings of fact under different burden of proof); *see also In re Application of Hughes*, 594 A.2d 1098, 1101-02 (Me. 1991) (remand for reconsideration due to application of wrong standard of proof).

## C. The Justification for Remand

All parties to this appeal appear to oppose a remand for reconsideration of the evidence. The Petitioners assert that the court should vacate the Commission decision and remand with a directive to the Commission to allow benefits. The Employers and the Commission say that, even if the Commission erred in requiring the Petitioners to prove that they should not be disqualified under section 1193(4), no remand is necessary because the Commission has indicated that the outcome would be no different were the burden allocated to the Employers.

---

clause within the act has the burden of showing by a preponderance of the evidence that the employee comes within such exception"); *Be-Mac Transport Co. v. Grabiec*, 314 N.E.2d 242, 249 (Ill. App. Ct. 1974) ("[T]he factual issue regarding availability of work at any plant during any given period of time is a matter peculiarly within the knowledge of the employer .... Therefore, in the process of attempting to bring otherwise eligible claimants within the affirmative defense created by this specific exception of the statute, the burden of proof should logically rest upon the employer"); *IBP, Inc. v. Aanenson*, 452 N.W.2d 59, 67 (Neb. 1990) ("If the strike claimants are otherwise qualified to receive benefits, [the employer] must prove disqualification under [the labor dispute disqualification provision]"). *But see Miceli v. Unemployment Comp. Bd. of Review*, 519 Pa. 515, 523-24 (1988) ("[T]he burden of proof rests with the claimants when the work stoppage is in the form of a strike").

The Petitioners would be entitled to the remand with an order to allow benefits only if the evidence compels a decision in their favor. The court is not prepared, at least at this stage, to say that it does, and in any case deems it appropriate to allow the Commission to re-address the issues on the basis of a correct allocation of the burden.

Likewise, the court does not accept the suggestion extended by the Employers and the Commission to let stand the Commission's error in allocating the burden of persuasion, based on the Commission's statement that the result would have been the same had the burden been on the Employers.

One reason why a remand is appropriate is that the Commission evidently believed that there is a difference between the "substantial curtailment" standard and the "failure to maintain substantially normal operations" standard, whereas the court's view, for the reasons given above, is that they are in effect synonyms defining a work stoppage.

Another reason for the remand is that the Commission's dictum about the result being the same if the burden were allocated to the Employers incorrectly characterizes that burden. The Commission said:

> Based on a totality of evidence, the Chairman concludes that the claimants have not met their burden to prove that there was no work stoppage in the case at bar. Furthermore, even if the Chairman were to reverse the Hearing Officer's finding regarding the burden of proof and find that the burden of proof rests with the Employers, the Employers presented substantial credible evidence that a work stoppage occurred when the claimants struck on October 17, 2014. R. 19).

"Substantial credible evidence that a work stoppage occurred when the claimants struck on October 17, 2014" does not define the Employers' burden, for two reasons.

First, the Employers had to prove that a work stoppage existed (or that there would have been a work stoppage under the conditions outlined in the statute), not just when the Petitioners struck, but during each week for which they claim the Petitioners should be

21

disqualified. As noted above, for a claimant to be disqualified under section 1193(4), the statute requires an affirmative finding, based on the evidence, as to each week for which the employer seeks to disqualify the claimant from benefits, that there was a work stoppage because of the labor dispute or would have been a work stoppage because of the labor dispute had the employer not been able to maintain substantially normal operations without hiring people to do the strikers' work.

Second, the Commission's articulation of Employer's burden omits any reference to the causation element of their proof: the Employers had to prove, as to each week at issue, that a work stoppage existed because of the strike (or that there would have been a work stoppage because of the strike). By way of example, one question of causation raised by the evidence is, if a work stoppage continued to exist during the period when the region was experiencing severe weather, whether the Employers have shown that the continuation of the stoppage was because of the strike.

For these reasons, the Commission's decisions regarding the Petitioners' claims will be vacated and the claims involved in these cases will be remanded for further proceedings.

D. Proceedings on Remand

The purpose of the remand is to enable the Commission to render decisions consistent with this Decision on Appeal, based on the same evidentiary record, on all of the Petitioners' claims.

One area to be addressed on remand has to do with the point made above about the need for a week-by-week determination of whether a work stoppage existed because of the strike. At oral argument, the Commission appeared to take the position that a week-by-week determination of disqualification under section 1193(4) was not required, but the statute plainly

22

dictates otherwise: disqualification occurs *"[f]or any week* with respect to which the deputy . . . finds that the claimant's total or partial unemployment is due to a stoppage of work that exists because of a labor dispute . . ." 26 M.R.S. § 1193(4) (emphasis added). The required affirmative finding has to be specific to each week at issue. The fact that a claimant must make a claim for unemployment for each week for which benefits are claimed, *id.* § 1192(1), means that the claimant's eligibility and any ground for disqualification must be decided on a week-by-week basis. *See McKenzie v. Maine Emp't. Sec. Comm'n, supra. Cf. Burger Unemployment Compensation Case*, 168 Pa.Super. 89, 91, 93, 77 A.2d 737 (1951)(" Each week of unemployment is the subject of a separate claim, the validity of which is determined by a consideration of conditions existing within that week . . .").

Thus, it will be necessary, on remand, for the Commission to examine the evidence in the current record and render findings as to whether, for each week during which the Employers contend the claimants should be disqualified, the evidence establishes either the existence of a work stoppage because of the strike or that there would have been a work stoppage because of the strike, and in the latter case, the effect on the Employers' operations of bringing in contract workers to do the strikers' work.

Another area to be addressed, if the Commission again applies the "failure to maintain substantially normal operations" standard, is whether the evidence enables the Commission to determine what constitutes the Employers' "substantially normal operations."[8]   Such a determination is an obvious baseline prerequisite to any determination of whether the

---

[8]   "Substantially normal operations" do not necessarily equate to "normal operations," just as "substantial curtailment" does not equate to "curtailment." "Substantially normal operations" means more or less normal operations, i.e. operations within a range of conditions over a span of time that encompass foreseeable, reasonable fluctuations and variations. Of necessity, determining what constitutes "substantially normal operations" may require historical data on operations over more than a snapshot in time.

23

Employers failed to maintain "substantially normal operations." In its Decision, the Commission focused largely on comparing data during the strike with data during the six months to a year before the strike. R.7-8). The implicit assumption underlying that comparison is that the data from the prior six months to a year do reflect "substantially normal operations," but there is no discussion or finding to that effect anywhere in the Commission Decision.

*Conclusion*

For the reasons discussed, the Commission did not commit an error of law by determining that a "stoppage of work" under section 1193(4) occurs when the employer fails to maintain substantially normal operations, although its view that a "failure to maintain substantial operations" differs from "a substantial curtailment" is not correct. The Commission did err, however, by placing the burden on the Petitioners to prove that they should not be disqualified for benefits.

The court remands the Petitioners' claims to the Commission to determine whether, for each week at issue, the Employers have met their burden to prove that Petitioners should be disqualified by virtue of 26 M.R.S.A. § 1193(4) from receiving unemployment compensation benefits.

Given that the Commission will be revisiting the evidence in light of a different allocation of the burden of persuasion, there is no need to address the evidentiary issues raised by the Petitioners.

IT IS ORDERED:

(1) The appeals of the Petitioners in the cases docketed as BCD-AP-15-06 and BCD-AP-16-01 are sustained. The Commission's decisions to disqualify the Petitioners listed in

24

Exhibits 1 and 2 to the Petition for Review of Final Agency Action in Docket No. BCD-AP-15-06 and the Petitioners listed in Attachments B and C to the Petition for Review of Final Agency Action in Docket No. BCD-AP-16-01 from unemployment benefits from October 19, 2014 are hereby vacated and set aside.

(2) All claims for unemployment compensation benefits of the Petitioners listed in Exhibits 1 and 2 to the Petition for Review of Final Agency Action in Docket No. BCD-AP-15-06  and all claims for unemployment compensation benefits of the Petitioners listed in Attachments B and C to the Petition for Review of Final Agency Action in Docket No. BCD-AP-16-01 are hereby remanded to the State of Maine Unemployment Insurance Commission for further proceedings consistent with this Decision on Appeal.

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Decision on Appeal by reference in the docket.

Dated: August 26, 2016

_____/s_____
A.M. Horton
Justice, Business & Consumer Court

Claimants Represented By Communications Workers of America, Local 1400, and International Brotherhood of Electrical Workers, Local 2327

v.

Maine Unemployment Insurance Commission

and

Fairpoint Logistics, Inc. and Northern New England Telephone Operations LLC (d/b/a Fairpoint Communications-NSE)

## BCD-AP-2015-06

### Petitioners:

Claimants Represented By Communications Workers of America, Local 1400, and International Brotherhood of Electrical Workers, Local 2327

Jeffrey Neil Young, Esq.
PO Box 79
Augusta, ME 04332

### Respondent:

Maine Unemployment Insurance Commission

Nancy Macirowski, AAG
6 State House Station
Augusta, ME 04333

### Parties in Interest

Fairpoint Logistics, Inc. and Northern New England Telephone Operations LLC (d/b/a Fairpoint Communications-NSE)

Joshua Dunlap, Esq.
254 Commercial St.
Portland, ME 04101